IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CR-95-D
No. 7:25-CV-267-D

DEONTE FATRELL MCCOY,           )
                                )
                    Petitioner, )
                                )
    v.                          )           **ORDER**
                                )
UNITED STATES OF AMERICA,       )
                                )
                    Respondent. )

On February 3, 2025, Deonte Fatrell McCoy ("McCoy" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 162-month sentence [D.E. 237]. On February 14, 2025, McCoy moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 of the United States Sentencing Guidelines ("Amendment 821") [D.E. 239]. On April 3, 2025, McCoy moved to delay the government's response until McCoy could supplement his pro se motion under section 2255 with a motion and memorandum of law from counsel [D.E. 241].[1] On May 2, 2025, McCoy, through counsel, filed a supplemental motion under section 2255 [D.E. 245] and an exhibit in support [D.E. 246].[2]

On May 14, 2025, probation filed a report concerning McCoy's motion for a sentence reduction [D.E. 250]. In that report, the United States opposed McCoy's request for a sentence

---

[1] The court already granted McCoy's motion to delay the time for the government's response. See [D.E. 243]. Thus, the court denies as moot McCoy's motion to delay the time for the government's response [D.E. 241].

[2] Counsel errantly filed the exhibit in support of McCoy's supplemental motion under section 2255 as a pending motion. See [D.E. 246]. Counsel filed a duplicate of the exhibit as a motion to seal. See [D.E. 247].

reduction [D.E. 250-1], and McCoy asked the court to reduce his sentence from 162 months' imprisonment to 145 months' imprisonment [D.E. 250-2]. On July 23, 2025, the United States moved to dismiss McCoy's section 2255 motions [D.E. 258] and filed a memorandum in support [D.E. 259]. McCoy's response was due on August 13, 2025. See Local Civ. R. 7.1(f)(1). McCoy did not respond. As explained below, the court grants the government's motion to dismiss, dismisses McCoy's section 2255 motions, denies a certificate of appealability, and denies McCoy's motion for a sentence reduction.

I.

On October 25, 2022, with a plea agreement, McCoy pleaded guilty to conspiracy to distribute and possess with intent to distribute 40 grams or more of fentanyl ("count one"). See [D.E. 101, 106, 107]; Rule 11 Transcript ("Rule 11 Tr.") [D.E. 199] 21–24; Sentencing Transcript ("Sent. Tr.") [D.E. 202]. While his federal charges were pending, McCoy was charged in state court with felony larceny and felony conspiracy, and McCoy tested positive for cocaine. See [D.E. 154]; Sent. Tr. 5–6; Presentence Investigation Report ("PSR") [D.E. 134] ¶ 60.

On March 8, 2023, the court began McCoy's sentencing hearing. See [D.E. 200]. Defense counsel requested a continuance to file a memorandum to address the safety valve and acceptance of responsibility. See id. at 2–5. The court granted the motion to continue. Id. at 4–5. On May 17, 2023, McCoy filed a sentencing memorandum, admitted that he "committed new and unrelated offenses while on bond," and addressed the safety valve, acceptance of responsibility, and McCoy's cooperation. See [D.E. 175] 1–4.

On May 23, 2023, the court held McCoy's sentencing hearing. See [D.E. 199]. At the sentencing hearing, the court adopted the facts set forth in the PSR. See Sent. Tr. 4; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court again raised the issue of acceptance of responsibility. See Sent. Tr.

5. McCoy admitted through counsel that he committed "a crime against the bond and the trust of this court that we know we're going to have to pay for." Id. at 6; [D.E. 175] 1, 3. In light of McCoy's conduct underlying his pending state court charges and his positive drug test while on release, the court declined to give McCoy credit for acceptance of responsibility. See Sent. Tr. 5–8. The court calculated McCoy's total offense level to be 32, his criminal history category to be V, and his advisory guideline range to be 188 to 235 months' imprisonment. See id. at 7–8; cf. PSR ¶¶ 74–84. The court also agreed that in light of then-existing Fourth Circuit precedent, United States v. Jones, 60 F.4th 230 (4th Cir. 2023), cert. granted, judgment vacated, 144 S. Ct. 1091 (2024), and abrogated by Pulsifer v. United States, 601 U.S. 124 (2024), McCoy was eligible for the safety valve in 18 U.S.C. § 3553(f)(1). See Sent. Tr. 5. After granting the government's downward departure motion, considering all relevant factors under 18 U.S.C. § 3553(a), and "taking into account issues associated with the safety valve," the court downwardly varied and sentenced McCoy to 162 months' imprisonment on count one. Id. at 23–32.

On June 9, 2023, McCoy appealed. See [D.E. 183]. On appeal, McCoy's counsel stated that there were no meritorious grounds for appeal but suggested that the court erred in denying McCoy a three-level reduction for acceptance of responsibility. See United States v. McCoy, No. 23-4404, 2024 WL 414972, at *1 (4th Cir. Feb. 5, 2024) (unpublished) (per curiam). On February 5, 2024, the Fourth Circuit affirmed McCoy's conviction, enforced the appellate waiver in McCoy's plea agreement, and dismissed McCoy's appeal. See id. at *2.

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

4

Case 7:21-cr-00095-D    Document 260    Filed 08/18/25    Page 4 of 20

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, McCoy must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted). "An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or earlier hearings], and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (quotation omitted). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second guess counsel's assistance after conviction or an adverse sentence. The question is whether an attorney's representation amounted to incompetence under the prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (quotation and citations omitted.)

5
Case 7:21-cr-00095-D    Document 260    Filed 08/18/25    Page 5 of 20

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 468 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional prejudice requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions more likely than not altered the outcome; but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest cases.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see Lee, 582 U.S. at 364–65. "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up).

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental

6

Case 7:21-cr-00095-D     Document 260     Filed 08/18/25     Page 6 of 20

interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58. "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (quotation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (quotation omitted).

McCoy argues that (1) the court violated due process when it declined to credit McCoy with acceptance of responsibility; (2) defense counsel rendered ineffective assistance of counsel when he "failed to object to an incorrect application of criminal history points;" and (3) defense counsel rendered ineffective assistance of counsel by "incorrectly advis[ing] [McCoy] to enter a guilty plea." [D.E. 245] ¶¶ 24–60. In his pro se motion, McCoy argues that defense counsel rendered ineffective assistance of counsel by failing to object to the court's allegedly incorrect determination of McCoy's criminal history. See [D.E. 237] 4–5.

As for McCoy's arguments concerning acceptance of responsibility, McCoy raised this argument on direct appeal, and the Fourth Circuit rejected it. See McCoy, 2024 WL 414972, at *1. McCoy may not "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." Dyess, 730 F.3d at 360 (quotation omitted); United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009); United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam). Thus, the claim fails.

In opposition, McCoy cites United States v. Dorsey, 611 F. App'x 767 (4th Cir. 2015) (per curiam) (unpublished), and argues that he may raise this argument under 28 U.S.C. § 2255 because his North Carolina state court charges (which this court allegedly cited as supporting its decision to deny McCoy a three-level reduction for acceptance of responsibility) did not result in a criminal

7

conviction. Dorsey, however, involved a state court conviction that the state court vacated after a federal district court relied on the state court conviction to increase defendant's criminal history category. See Dorsey, 611 F. App'x at 769. That did not happen in this case. This court did not rely on a state court conviction that a state court later vacated. Rather, this court relied, in part, on McCoy's admission to certain underlying criminal conduct while on pretrial release. See [D.E. 175] 1, 3. Thus, Dorsey offers McCoy no comfort, and he may not raise the claim. See, e.g., Dyess, 730 F.3d at 360; Linder, 552 F.3d at 396; Roane, 378 F.3d at 396 n.7; Boeckenhaupt, 537 F.2d at 1183.

Alternatively, and in any event, this court also relied on McCoy's cocaine use on pretrial release as another, independent reason to deny credit to McCoy for acceptance of responsibility. See Sent. Tr. 5; PSR ¶ 60. Thus, even if McCoy could raise the claim and even if the court had not considered the criminal conduct underlying McCoy's new North Carolina state court charges, the court permissibly declined to give McCoy credit for acceptance of responsibility. See, e.g., United States v. Haught, 387 F. App'x 327, 328–29 (4th Cir. 2010) (per curiam) (unpublished); United States v. Jarrell, 296 F. App'x 342, 343 (4th Cir. 2008) (per curiam) (unpublished); United States v. Childers, 206 F. App'x 270, 271–72 (4th Cir. 2006) (per curiam) (unpublished); United States v. Underwood, 970 F.2d 1336, 1339 (4th Cir. 1992) (per curiam). Thus, the court rejects McCoy's arguments concerning acceptance of responsibility.

McCoy argues that defense counsel provided ineffective assistance of counsel when he failed to object to the court's allegedly incorrect calculation of McCoy's criminal history. See [D.E. 237] 4; [D.E. 245] ¶¶ 30–46. Specifically, McCoy argues that defense counsel should have objected to assigning criminal history points for McCoy's shoplifting convictions because McCoy did not serve an active sentence for those convictions. See [D.E. 245] ¶¶ 30–46. McCoy also

argues that defense counsel provided ineffective assistance of counsel when he failed to object to scoring McCoy's convictions for felony larceny, common law uttering of forged papers, and simple assault. See id. Moreover, McCoy argues that defense counsel provided ineffective assistance of counsel when he did not object to assigning two points for engaging in the charged conduct in count one while under a criminal justice sentence. See id. According to McCoy, the court "should have . . . assigned no more than [two] points for [McCoy's] criminal history, which corresponds to a criminal history category of II, not V." Id. at ¶ 43.

McCoy cannot use section 2255 to attack his advisory guideline range retroactively. See, e.g., United States v. Foote, 784 F.3d 931, 935–36 (4th Cir. 2015); United States v. Pregent, 190 F.3d 279, 283–84 (4th Cir. 1999). Thus, to the extent McCoy seeks to attack his advisory guideline range retroactively, the claim fails.

Alternatively, the court has reviewed McCoy's criminal history calculation, and the public records of McCoy's convictions and sentences that support the calculation. Notably, at McCoy's sentencing hearing, McCoy swore that he reviewed the PSR with his attorney. See Sent. Tr. 4. Moreover, McCoy did not object to the facts in the PSR, including those facts concerning his incarceration for certain convictions. See id. at 4–5. In assessing counsel's performance, the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. McCoy has not plausibly alleged that counsel was ineffective in failing to object to McCoy's criminal history. See PSR ¶¶ 34–50; U.S.S.G. §§ 4A1.1–2 & Commentary. Thus, McCoy's claim fails as to alleged deficient performance. See Strickland, 466 U.S. at 687–91, 698–99.

Alternatively, even if the court incorrectly calculated McCoy's criminal history and counsel should have objected, McCoy has not plausibly alleged that he suffered prejudice from

defense counsel's failure to object. The only arguable incorrect calculation of McCoy's criminal history category involves McCoy's three shoplifting convictions. See PSR ¶¶ 39–41. Even if McCoy was not incarcerated for those convictions, and they should not have been scored, McCoy still would have been a criminal history category IV, and his advisory guideline range would have been 168–210 months. See PSR ¶¶ 37, 42, 43, 45, 48–50. McCoy's 162-month sentence is below that advisory guideline range.

To prove prejudice from deficient performance at sentencing, McCoy must prove a reasonable probability that he would have received a lower sentence if the error had not occurred. See, e.g., Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Stated differently, McCoy must prove it is "reasonably likely" his sentence would have been lower. Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 696. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. To determine whether McCoy satisfies this standard, a court "must 'consider the totality of the evidence before the judge.'" Thornell v. Jones, 144 S. Ct. 1302, 1310 (2024) (quoting Strickland, 466 U.S. at 695); see Harrington, 562 U.S. at 111.

Here, after considering the entire record and all relevant section 3553(a) factors, the court explained in detail its consideration of the section 3553(a) factors and sentenced McCoy to a downward variant sentence of 162 months' imprisonment. See Sent. Tr. 23–34. The court's explanation referenced nearly every factor under 18 U.S.C. § 3553(a) and did not remotely consider only the advisory guideline range of 188 to 235 months' imprisonment. See id. The court noted the serious nature of the conspiracy, the large amount of fentanyl McCoy conspired to distribute, and the extraordinary harm that fentanyl caused. See id. at 24–25. The court also

10
Case 7:21-cr-00095-D    Document 260    Filed 08/18/25    Page 10 of 20

discussed McCoy's cooperation and his personal history. See id. at 25–27. The discussion encompassed the good and the bad. See id. Moreover, the court described the need for the sentence to promote respect for the law, to provide just punishment, and to deter others. Id. at 29. The court also balanced McCoy's serious and prolonged criminal conduct with his cooperation and the issues he raised in his brief about the safety valve, acceptance of responsibility, and his "new and unrelated offenses while on bond." [D.E. 175] 1; see Sent. Tr. at 29. Furthermore, the court stated that even if it had miscalculated McCoy's advisory guideline range, it would "impose the same sentence as an alternative variant sentence." Id. at 31; see United States v. Gomez-Jimenez, 750 F.3d 370, 385 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 162 n.3 (4th Cir. 2012).

The alternative variant sentence does not apply to the issue of Strickland prejudice where "it is clear from the record that, but for counsel's unprofessional waiver of . . . objections at sentencing, there is a reasonable probability that [defendant's] sentence would have been different." United States v. Freeman, 24 F.4th 320, 332 (4th Cir. 2022) (en banc). In assessing Strickland prejudice, however, a court "must 'consider the totality of the evidence before the judge.'" Thornell, 144 S. Ct. at 1310 (quoting Strickland, 466 U.S. at 695). The court then must determine whether it is "reasonably likely" McCoy's sentence would have been lower. Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 696.

Here, the court's separate and particular analysis of the section 3553(a) factors supports the conclusion that McCoy's sentence would not have been lower even if the court had decreased his criminal history category and advisory guideline range. See Molina-Martinez v. United States, 578 U.S. 189, 200–01 (2016); Gomez-Jimenez, 750 F.3d at 386. In assessing prejudice, the court "consider[ed] the facts and circumstances of the case before it." Molina-Martinez, 578 U.S. at 200. Moreover, as the Supreme Court explained in Molina-Martinez, "[t]here may be instances

11

when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." Id. "The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." Id. (emphasis added.) The district court's explanation may "make it clear that the judge based the sentence . . . on factors independent of the Guidelines." Id. If so, there is no prejudice. See id.; Thornell, 144 S. Ct. at 1310; United States v. Davilla, 569 U.S. 597, 611 (2013) ("Our essential point is that particular facts and circumstances matter [in assessing prejudice.]"). Here, the court's focus on the section 3553(a) factors as the "primary factor," "independent of the Guidelines," defeats McCoy's argument that counsel's performance at sentencing prejudiced McCoy. See Molina-Martinez, 578 U.S. at 197, 200–01; Harrington, 562 U.S. at 111–12; Hill, 474 U.S. at 58–59; Strickland, 466 U.S. at 690-96, 699–700; Sent Tr. 23–34. At bottom, even if the court miscalculated McCoy's advisory guideline range, McCoy has not plausibly alleged that it is reasonably likely his sentence would have been different. Thus, McCoy has not plausibly alleged prejudice, and his claim fails.

McCoy also argues that defense counsel provided ineffective assistance of counsel by advising McCoy to plead guilty "to a plea that increased his sentencing exposure." [D.E. 245] ¶ 47. According to McCoy, his plea was not knowing and voluntary and defense counsel provided ineffective assistance of counsel by advising McCoy to plead guilty where the plea agreement contained a stipulated drug weight that was higher than the 40 grams or more of fentanyl referenced in count one of the indictment. See id. at ¶¶ 48, 51–60.

At McCoy's Rule 11 hearing, the court thoroughly advised McCoy of the charges, the penalties, his rights, and the rights that he would waive by pleading guilty. See Rule 11 Tr. 2–26. In response to the court's questioning, McCoy affirmed that he was fully and completely satisfied with his attorney's legal services. See id. at 20. McCoy also affirmed that he had read the entire

12

plea agreement, discussed it with his lawyer, and understood it. See id. at 17–23. When McCoy pleaded guilty, he knew the terms of the plea agreement, including the non-binding stipulated drug weight in the plea agreement. See id.; see also Plea Agreement ("Plea Ag.") [D.E. 106] ¶ 5.a. McCoy then knowingly and voluntarily pleaded guilty to conspiring to distribute and possess with intent to distribute 40 grams or more of fentanyl in count one. See Rule 11 Tr. at 2–24. On appeal, the Fourth Circuit held that McCoy knowingly and voluntarily pleaded guilty to count one, and enforced the appeal waiver in McCoy's plea agreement. See McCoy, 2024 WL 414972, at *1–2.

McCoy's sworn statements at his Rule 11 hearing bind him and defeat his arguments about his decision to plead guilty. See, e.g., Blackledge, 431 U.S. at 74–75; United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010); United States v. Lemaster, 403 F.3d 216, 221–23 (4th Cir. 2005). When McCoy pleaded guilty, he knew that the charge involved 40 grams or more of fentanyl and that he was agreeing in his plea agreement that the "relevant and readily provable quantity of controlled substances to be used in the determination of the base offense level pursuant to U.S.S.G. §2D1.1 is at least 1,000 kilograms, but less than 3,000 kilograms of converted drug weight." Plea Ag. ¶¶ 3.a., 5.a. During sentencing, the court used this stipulated drug weight in the plea agreement to calculate McCoy's base offense level of 30. See PSR ¶ 75. Had defense counsel not skillfully negotiated this drug-weight agreement under Rule 11(c)(1)(B), McCoy's base offense level would have been 34 and his total offense level would have been four levels higher. See id. at ¶ 87; Fed. R. Crim. P. 11(c)(1)(B). Thus, McCoy has not plausibly alleged deficient performance or prejudice concerning the drug weight or sentencing exposure. See, e.g., Premo v. Moore, 562 U.S. 115, 124–28 (2011); Hill, 474 U.S. at 57–58; Strickland, 466 U.S. at 687–700.

As for McCoy's claim that defense counsel rendered ineffective assistance of counsel by advising McCoy to plead guilty, McCoy knowingly and voluntarily swore that he committed the

crime during his Rule 11 hearing. See Rule 11 Tr. 2–26; cf. Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Moreover, the evidence against McCoy was overwhelming. See PSR ¶¶ 11–29. Had McCoy been convicted at trial, his advisory guideline range would have been much higher. Cf. id. ¶ 87. Furthermore, McCoy would not have received the benefit of the government's downward departure motion. See [D.E. 200] 4; Sent. Tr. 8–15. If McCoy had not received that downward departure motion, his sentence would have been much higher. See Sent. Tr. 23–34. McCoy has not plausibly alleged deficient performance or prejudice concerning his defense counsel's advice to plead guilty. See, e.g., Premo, 562 U.S. at 124–28; Hill, 474 U.S. at 57–58; Strickland, 466 U.S. at 687–700. Thus, McCoy's claim fails.

After reviewing the claims presented in McCoy's motions, the court finds that reasonable jurists would not find the court's treatment of McCoy's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

Under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's term of imprisonment if the defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" by changes to the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(2); see United States v. Barrett, 133 F.4th 280, 282–83 (4th Cir. 2025); United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019); United States v. Williams, 808 F.3d 253, 257–58 (4th Cir. 2015). A sentence reduction under 18 U.S.C. § 3582(c)(2) must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. §

14

Case 7:21-cr-00095-D    Document 260    Filed 08/18/25    Page 14 of 20

3582(c)(2); Williams, 808 F.3d at 257. The Sentencing Commission policy statement in U.S.S.G. § 1B1.10 applies to section 3582(c)(2) proceedings. See Dillon v. United States, 560 U.S. 817, 819, 821 (2010); Martin, 916 F.3d at 396; Williams, 808 F.3d at 258.

The sentencing court follows a two-step inquiry when reviewing motions for sentence reductions under section 3582(c)(2). See Dillon, 560 U.S. at 826–27; Martin, 916 F.3d at 396; Williams, 808 F.3d at 258. First, the sentencing court must review the Sentencing Commission's instructions in U.S.S.G. § 1B1.10 "to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Williams, 808 F.3d at 257–58 (quotation and emphasis omitted). At this step, section 1B1.10 requires the court to begin by "determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." Dillon, 560 U.S. at 827 (cleaned up). If the court determines that the defendant is eligible for a sentence reduction, "the court moves to the second step and determines the extent of the reduction." Williams, 808 F.3d at 258. At step two, section 3582(c)(2) "instructs a court to consider any applicable [section] 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827; see, e.g., United States v. Navarro-Melendez, No. 1:18-CR-91, 2024 WL 1722524, at *1 (W.D.N.C. Apr. 22, 2024) (unpublished); United States v. Pledger, No. 2:12-CR-23, 2017 WL 3495723, at *1–2 (E.D.N.C. Aug. 14, 2017) (unpublished).

In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585

15

U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81, 490–91 (2011); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024); United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. High, 997 F.3d 181, 187–91 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam); United States v. McDonald, 986 F.3d 402, 410–12 (4th Cir. 2021); Martin, 916 F.3d at 395–98.

McCoy moves for a sentence reduction based on Amendment 821 Part A. See [D.E. 239] 1–2; [D.E. 250] 1. Amendment 821 Part A, which became effective on November 1, 2023, amended Chapter Four of the Sentencing Guidelines by striking the old section 4A1.1(d). See U.S.S.G. app. C, amend. 821. Before Amendment 821, section 4A1.1(d) added two status points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Id. § 4A1.1(d) (2021). Section 1B1.10 authorizes a court to reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) using Amendment 821. See id. § 1B1.10(d).

At step one, the court calculates McCoy's new advisory guideline range to be 168 to 210 months' imprisonment based on a total offense level 32 and a criminal history category IV. See [D.E. 250] 1. McCoy's new total offense level remains the same as his previous total offense level. In accordance with Amendment 821 Part A, the court removes the two status points assessed under U.S.S.G. § 4A1.1(d) for a defendant who committed his offense while under any criminal-justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status if a defendant has six or fewer points under U.S.S.G. § 4A1.1(a)–(d). Thus, McCoy's criminal history category is IV. See [D.E. 250] 1.

At step two, the court has completely reviewed the entire record, the parties' arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-

16
Case 7:21-cr-00095-D    Document 260    Filed 08/18/25    Page 16 of 20

Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 490–93; Davis, 99 F.4th at 659; Smith, 75 F.4th at 464–66; United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023); United States v. Swain, 49 F.4th 398, 402–03 (4th Cir. 2022); United States v. Chambers, 956 F.3d 667, 671–75 (4th Cir. 2020), abrogated on other grounds by Concepcion v. United States, 597 U.S. 481 (2022); United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished). McCoy is 37 years old and engaged in serious criminal conduct. See PSR ¶¶ 11–29. Investigators with the Lumberton Police Department ("LPD") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received information in 2020 that McCoy's co-defendant, Jania Leggett ("Leggett"), was trafficking fentanyl and heroin for her boyfriend, Clarence Graham ("Graham"), while Graham was incarcerated. See id. at ¶ 11. On August 20, 2020, a drug user informed investigators that the drug user previously purchased 1.6 grams of heroin from McCoy at his residence in Lumberton. See id. at ¶ 12. Investigators soon discovered that Graham was running a large-scale drug trafficking operation from jail and that McCoy and Leggett were selling large amounts of narcotics for Graham. See id. at ¶¶ 12–19.

In November 2020, Graham called McCoy multiple times from jail. See id. at ¶¶ 20–23. Graham and McCoy discussed the drug trafficking operation, payments that Graham wanted McCoy to make to other co-conspirators, and McCoy's own profits from selling heroin and fentanyl. See id. As the investigation continued, authorities observed McCoy sell narcotics, and received numerous tips regarding McCoy's drug dealing and involvement in Graham's drug trafficking organization. See id. at ¶¶ 23–27. On March 24, 2022, federal authorities arrested McCoy. See id. at ¶ 28. Based on the investigation, between August 2020, and February 27, 2021, McCoy was accountable for possessing or distributing 5,669 grams of fentanyl and 140.5 grams of heroin. See id. at ¶ 29. Even accepting the lower stipulated drug weight in McCoy's

plea agreement, McCoy was a large fentanyl and heroin dealer. See id. at ¶ 87.

McCoy's serious federal offense was nothing new. When McCoy pleaded guilty to count one, he was already a felon with state court convictions for simple assault (two counts), larceny (two counts), reckless driving, breaking and/or entering (felony), larceny after breaking and entering (felony), driving while license revoked, shoplifting (three counts), larceny (felony), and common law uttering of forged papers. See id. at ¶¶ 34–45. McCoy also failed multiple times on state probation. See id. at ¶¶ 37, 42–43. Moreover, McCoy's interactions with the state criminal justice system did not prevent him from engaging in his latest criminal behavior.

McCoy asks the court to reduce his sentence on count one from 162 month's imprisonment to 145 months. See [D.E. 250-2]. In support, McCoy cites some positive steps he has taken while federally incarcerated, such as participating in educational programming, maintaining work assignments, and paying his special assessment. See id.; [D.E. 250] 1–2; cf. Pepper, 562 U.S. at 491–92. Moreover, McCoy has not incurred any infractions while federally incarcerated.

This court disagrees with the Commission's retroactive policy change concerning status points. See Spears v. United States, 555 U.S. 261, 264–66 (2009) (per curiam) (acknowledging that a district court may reject and vary categorically from the guidelines based on a policy disagreement with the guidelines); Kimbrough v. United States, 552 U.S. 85, 108–11 (2007) (same); United States v. Rivera-Santana, 668 F.3d 95, 101 (4th Cir. 2012) (same). The policy change ignores how status points help to promote respect for the law for every offender who commits a new crime while on supervision. In explaining its reasons for the Amendment, the Commission acknowledged that status points still serve multiple purposes of sentencing, including addressing the offender's lack of respect for the law. See U.S.S.G. supp. app. C, amend. 821, Reason for Amendment, 241 (explaining why the Commission retained status points for

offenders in higher criminal history categories); U.S. Sent'g Comm'n Pub. Meeting Transcript, 27–28 (Aug. 24, 2023), https://www.ussc.gov/policymaking/meetings-hearings/public-meeting-august-24-2023 (same). This court finds that status points serve an important purpose in promoting respect for the law for all offenders, not just offenders in higher criminal history categories. An offender who is on supervision when he commits a new crime shows even less respect for the law than an offender who is not on some form of supervision. A sentencing court may properly account for that difference in status in order to promote respect for the law under section 3553(a).

In any event, even if the court agreed with the Commission's new policy, the court would not reduce McCoy's sentence. McCoy's interactions with the state criminal justice system for his serious criminal behavior did not prevent even more serious criminal behavior. See PSR ¶¶ 34, 36–46. Although McCoy has not incurred a disciplinary record while federally incarcerated, the court expects such behavior from all inmates. McCoy's serious and prolonged criminal conduct and proclivity to recidivate demonstrate his dangerousness.

The court has considered the entire record and all relevant policy statements. See Concepcion, 597 U.S. at 494–95 & n.4; Pepper, 562 U.S. at 490; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 410–12; Martin, 916 F.3d at 398. The court has balanced McCoy's rehabilitation efforts while federally incarcerated with his serious criminal conduct, his criminal history, his failures on state probation, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. See Concepcion, 597 U.S. at 496–502; Pepper, 562 U.S. at 480–81; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Having considered the entire record, the section 3553(a) factors, the parties' arguments, the need

to punish McCoy for his serious criminal behavior, to incapacitate McCoy, to promote respect for the law, to deter others, and to protect society, the court denies McCoy's motion for a sentence reduction. See, e.g., Concepcion, 597 U.S. at 496–502; Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020). Even if the court miscalculated the new advisory guideline range, the court would impose the same sentence as an alternative variant sentence in light of the entire record and the section 3553(a) factors. See 18 U.S.C. § 3553(a); Gomez-Jimenez, 750 F.3d at 382–86; Hargrove, 701 F.3d at 161–65.

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 258], DISMISSES petitioner's motions [D.E. 237, 245], DENIES a certificate of appealability, DENIES petitioner's motion for a sentence reduction [D.E. 239], and DENIES AS MOOT petitioner's motion to delay the time for the government's response [D.E. 241]. The clerk SHALL terminate petitioner's errant filings [D.E. 246, 247]. The clerk SHALL close the case.

SO ORDERED. This 18 day of August, 2025.

*signature*
JAMES C. DEVER III
United States District Judge